### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SNIZHANA KOVAL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL NO. 20-cv-00858-RAL** |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI, Acting** | : | |
| **Commissioner of Social Security,**[1] | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**RICHARD A. LLORET**                                    **August 9, 2021**
**U.S. MAGISTRATE JUDGE**


Snizhana Koval ("Ms. Koval") alleges the Administrative Law Judge ("ALJ") erred in denying her application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Social Security Benefits ("SSI"). *See* Complaint for Review of a Social Security Disability or Supplemental Security Income Decision ("Comp."), Doc. No. 2, at 1; letters dated April 21, 2020, July 2, 2020, and September 25, 2020, Doc. Nos. 12, 17, 22, respectively ("Plaintiff's letters"). Plaintiff does not have counsel, although the matter was twice placed on the extranet for selection by a panel attorney. Doc. Nos. 8, 14. In her *pro se* Complaint, Ms. Koval alleges that the ALJ erred by failing to grant her benefits after she received treatment for breast cancer. Her complaint states that the years 2017 to 2019 were

> Very difficult for me. I had five surgeries, chemotherapy, horsepten, (sic) after
> that blood clot on my right arm, there were a lot of side effects. I saw doctors

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

about four times each week. It was not possible to work. I borrowed a lot [of] money to survive. I still have health problems—two months ago I was at hospital because I passed out.

Comp. at 2-3. Although Ms. Koval filed the several letters mentioned above with the court that reiterate her desire for benefits, she did not file a brief setting out her claims. *See* Plaintiff's Letters, Doc. Nos. 12, 17, 22.

The Acting Commissioner has appropriately stated Plaintiff's claims for relief as: 1) whether the ALJ correctly decided that Plaintiff failed to prove disability under the applicable statutory and regulatory scheme; 2) whether the ALJ reasonably conducted the hearing without an interpreter; 3) whether Plaintiff's counsel improperly represented her, causing a basis for remand; and 4) whether substantial evidence supports the ALJ's finding that Plaintiff could perform a range of light work despite her impairments. *See* Defendant's Response to Request for Review of Plaintiff, Doc. No. 23 ("Comm. Resp.").

After careful review of the record, I find that substantial evidence supported the ALJ's determination that Ms. Koval had as of the date of the ALJ's decision, the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), with certain limitations. I find that the ALJ's RFC analysis is capable of meaningful review, and that his decision to find Ms. Koval capable of her previous employment as a security guard was based on substantial evidence. I conclude that the ALJ's determination that Ms. Koval was limited to light work[2] with additional restrictions was supported by

---

[2] The Social Security Administration's regulations classify physical exertional limitations of work in the national economy by defining four broad categories of jobs: sedentary, limited, medium, and heavy work. *See* 20 C.F.R. §§ 404.1567, 416.967. Light work is at issue in this case, and is defined by the regulation as follows:

    (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a

substantial evidence, as was the ALJ's determination that Ms. Koval was not disabled under sections 216(i) and 223(d) of the Social Security Act, up to and including the date of his decision on May 16, 2019. Finally, I find that the ALJ reasonably conducted the hearing without an interpreter, and that Ms. Koval's counsel properly represented her at the hearing.

## **PROCEDURAL HISTORY**

Plaintiff Snizhana Koval filed an application for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on April 13, 2017, alleging disability as of March 1, 2017 due to stage two breast cancer.[3] R. 192-93, 211. On July 18, 2017, her claim was denied. *Id*. ALJ Ryan Hoback held a hearing on January 29, 2019 pursuant to Ms. Koval's timely request, and Ms. Koval was represented by counsel at the hearing. R. 31-70. On May 16, 2019, ALJ Hoback issued a decision denying Ms. Koval's application for DIB and SSI. R. 16-26. On December 19, 2019, the Appeals Council denied Ms. Koval's request for review. R. 1-6.

This request for review of the ALJ's findings was filed in this court on February 14, 2020. Plaintiff consented to review by the Magistrate Judge on February 14, 2020. Doc. No. 4.

---

job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

*Id.*

[3] There is some ambiguity in the record regarding the stage of Plaintiff's cancer. The vast majority of treatment notes refer to Plaintiff's breast cancer as "stage one," however, the Disability Report prepared by the Social Security Administration lists her breast cancer as "stage two." *See* R. 211, *but see* R. 402, 965, 1228 (records of treating physician Dr. Jablon, listing the cancer as stage one).

## FACTUAL HISTORY

*A.  The Hearing.*

Ms. Koval was 45 years of age at the time of the alleged disability onset date. R.

25. At the hearing before the ALJ, Ms. Koval's attorney described the circumstances

leading up to her requesting disability as follows:

> Ms. Koval was a younger individual on her onset date of March 1, 2017,
> which dates back to a biopsy of her left breast following an abnormal
> mammogram. She had several surgeries beginning May of 2017 with a left breast
> mastectomy, followed by a tissue expander on May 3, followed by a revision and
> reconstruction and port insertion May 23, May 25. She had chemotherapy from
> June to September 2017 and suffered side effects including nausea as a result of
> the treatment. January 29, 2018, she had right breast reduction. May 25, 2018,
> she had scar revision. June 29, she had the port removed that was used to—for
> chemotherapy and developed a deep vein thrombosis, swelling and numbness of
> her right dominant arm. The swelling eventually went down. She still has some
> numbness of that arm that she notices with activity. And she's still receiving oral
> medication, Tamoxifen, for the—for post-surgery treatment. The theory is that
> not only did she undergo all of these surgeries and the pain and the recovery and
> the side effects of the medications and the chemotherapy, but she missed—she
> would have missed too much time from work during this time period to be able to
> return to work. There is a note in the file. She had requested that she be cleared
> to return to work because she was trying to—she wanted to look for work. And
> that is in the file that her physician agreed to write that, limit her to less than ten
> pounds lifting. But she—because of the side effects and the pain that I mentioned,
> she has been unable to return to work at this time. And I ask that you find her
> disabled on that basis.

R. 35-36.[4]

---

[4] My review of the record confirmed that this statement by counsel was largely accurate. The record also
demonstrated, however, that Ms. Koval's adverse issues, including the nausea caused by chemotherapy
and the problems related to the DVT in her right arm completely resolved. *See* R. 250, 303, 313, 350-51,
403, 442, 706, 864, 872, 875, 877, 898, 905, 921, 935, 950, 957, 984-86, 1013-14, 1037, 1048, 1073, 1097,
1103, 1110, 1113, 1123, 1125, 1130-31, 1142, 1149-50, 1162, 1173, 1183, 1192, 1200, 1203-04, 1209, 1228-29,
1230-31, 1233-34, 1238-39, 1257-58, 1264, 1275-76, 1284-86, 1318-19.

Counsel also verified at the outset of the hearing that there were just two physician's opinions in the file, that of Dr. Zavitsanos on January 29, 2018 (R. 1260, 1278, 1302) and the "lower-level physician opinion" found at "1A and 2A" in the record.[5]

### 1. Ms. Koval's Testimony.

Ms. Koval testified that she has a Ph.D. "in my country." (Ukraine). R. 40. Ms. Koval explained that she had been working as a security guard but her fiancé had suggested she obtain her Commercial Driver's License (CDL) as he also had one and they could drive a truck as a team. *Id*. She did obtain her CDL but was unable to find work as a truck driver because she lacks experience. *Id*. She explained that a trucking company paid for an additional course so that she could get rid of the restriction that she could only drive a truck with an automatic transmission. *Id*. at 41. When she went for routine health screenings before taking a job that would cause her to leave Philadelphia for days at a time, however, she discovered her breast cancer. *Id*. at 42.

Although a bit confusing in the transcript, it appears that Ms. Koval attempted to receive unemployment when she was forced to stop working during her breast cancer treatment but was unable to collect unemployment because she had already left her job working as a security guard and had not yet begun to work as a truck driver. *Id*. at 43. She described her work as a security guard as checking identifications and walking rounds, she did not need to lift or carry items weighing more than ten pounds. *Id*. at 44. Prior to working as a security guard, Ms. Koval worked as a home health aide for several years. *Id*. at 45-46.

---

[5] The second opinion referenced by the ALJ appears to be a reference to the Disability Determination Explanation found at R. 72-87, which contains a Residual Functional Capacity ("RFC") analysis by Stacie Weil, MD, dated 07/17/2017 at R. 84-87.

Ms. Koval arrived in the United States in 2005 unable to speak English, however, she was granted a bachelor's and master's degree (she did not specify the subject) based upon the Ph.D. she earned in Ukraine. *Id*. at 47. She went to school to improve her English, took computer classes and citizenship classes, and earned U.S. citizenship five years after her arrival. *Id*. at 48. Her boyfriend at the time (now deceased) assisted her with private tutors to improve her English proficiency. *Id*. at 48.

Ms. Koval testified to the ALJ that she believed she could no longer work because,

> I still go to doctors. For example[,] even tomorrow I have mammogram. February 85 (sic), this coming February 85 (sic) I have gynecologist. My doctor want to change my medicine, Tamoxifen, because feel no good. He want to change other medicine. My vision less than was before. I have test. Eye doctor want I come back. This never was. My vision always was perfect. Now he want to check my vision because vision less. Knee, I have very big pain at knee so I have knee x-ray two weeks ago.. . . And I feel still no good, like sometimes I'm very dizzy.

*Id*. at 49-50. She went on to describe other problems caused by the cancer therapy which required monitoring of her liver and treatment of skin issues. *Id*. at 50. In response to questioning by her attorney, Ms. Koval stated that she still had some numbness and swelling in her right arm from the earlier blood clot. *Id*. at 56. She described being unable to write for long periods, and said she has to drive using her left hand but was otherwise unhampered by her right arm issues. *Id*. at 56-57.

Despite her problems with her cancer treatment and other health problems, Ms. Koval testified that she can take care of her personal hygiene, cook and prepare simple meals, and has attended cooking classes and yoga classes. *Id*. at 51-52. Although she disputed her doctor's notation that she lifts weights when exercising, she does do light exercises every day. *Id*. at 58. She grocery shops every two to three weeks for two to three hours. *Id*. at 53, 56. Ms. Koval testified that she spends much of her day watching

television, mostly YouTube videos about exercise and healthy foods and ways to open a small business. *Id.* at 53-54. She told the ALJ she thought she could possibly work part-time but could no longer work as a security guard because, "I cannot stand on my feet eight hours and not only eight hours. And what kind of employer will be keep (sic) me working if I have to go [to the] doctor, I feel no good? They don't want to hear that. You have to go and work." *Id.* at 55.

### 2. *Vocational Expert Testimony.*

Vocational Expert (VE) Peter Manzi also testified during the hearing. R. 60-67. Mr. Manzi classified Ms. Koval's past work as a security guard as "light and semi-skilled, SVP[6] of 3 and performed as light based on the standing and walking." *Id.* at 60. Her work as a home health aide is classified by Social Security as a "home attendant," and is considered medium and semi-skilled, with an SVP of 3. *Id.* at 60-61. The ALJ posed the following hypothetical:

> Assume a hypothetical individual of the Claimant's age and education with the past jobs you just described. Further assume the individual is limited to light, except within postural limitations it will be occasional for climb[ing] ramps and stairs and crawl[ing], but never climb ladders, ropes, or scaffolds and within environmental limitations it will be occasional for exposure to work involving unprotected heights, moving mechanical parts, and operating a motor vehicle. Could the hypothetical individual perform any of the past jobs you described as actually performed or generally performed in the national economy?

---

[6] "SVP" is the acronym for "Specific Vocational Preparation," and corresponds to the amount of training or experience required in a given job in order to obtain the acquired skills necessary to perform the job. For example, an SVP of three requires an individual to have performed the work for over one month, up to and including three months, in order to have acquired the skills necessary to perform the job. *See* R. 24; *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4P (S.S.A. Dec. 4, 2000) ("The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.")

*Id.* at 61. Mr. Manzi opined that the hypothetical individual would be able to perform Ms. Koval's past relevant work as a security guard. *Id.* Additionally, Mr. Manzi opined that there were additional representative jobs in the national economy that would be appropriate for the hypothetical individual, including "laundry sorter," (light, unskilled, SVP of 2); "garment folder," (light, unskilled, SVP of 2) and "marker II," (light, unskilled, SVP of 2). *Id.* at 62.

Altering the hypothetical to eliminate the carrying of anything greater than ten pounds in weight did not preclude Ms. Koval's prior employment as a security guard but did eliminate her previous work as a home attendant. *Id.* at 63. It would also eliminate the "laundry sorter" representative employment, but could be replaced with "photocopying machine operator," (light, unskilled, SVP of 2). *Id.* at 64. Changing the hypothetical again to the classification of "sedentary" precludes Ms. Koval's past work as a security guard, however, representative employment still exists as (1) "table worker" (sedentary, unskilled, SVP 2); (2) "addresser," (same); and (3) "order clerk" (same). *Id.* at 64-65. Finally, adding to the hypothetical the limitation of absent from work three or more days per month was work-preclusive. *Id.* at 65.[7] In response to Ms. Koval's counsel's question, adding a 20% of the workday off-task limitation due to symptoms, Mr. Manzi responded that anything in excess of 15% of the workday off-task would eliminate all work. *Id.* at 66. Additionally, a limitation in the use of the hypothetical person's right dominant upper extremity would affect the expert's decision, as "[a]ll the jobs I cited require either frequent or constant bilateral reaching, with the exception of

---

[7] Because the DOT does not address absenteeism, the Vocational Expert's testimony on this point was based on his experience. *Id.*

the table worker. In that case . . . if the dominant upper extremity could reach occasionally it could be done. And that would be the table worker only." *Id*. at 66-67.

        B.  *The ALJ's Decision*.

The Administrative Law Judge issued his opinion on May 16, 2019. R. 16-26. The ALJ found that Ms. Koval meets the insured status requirements of the Social Security Act through December 31, 2021, and she had not engaged in substantial gainful activity (SGA) since March 1, 2017, her alleged onset date. R. 19. He found at step two that Ms. Koval has a severe impairment of left breast cancer, pursuant to 20 CFR 404.1520(c) and 416.920(c). *Id*. Additionally, Ms. Koval has the non-severe impairment of deep vein thrombosis of the right upper extremity.[8] *Id*. He found this impairment, which consisted of a blood-clot in her right arm, did not last for twelve consecutive months, as it was diagnosed in June 2018 but resolved through treatment with medication within approximately four months. *Id*.

The ALJ found that Ms. Koval also alleged she had severe impairments of obesity, vision issues, and right knee issues,[9] however, none of these impairments were established through medical evidence, but rather were merely alleged by the Claimant herself. Because none of the Claimant's medical records established a consistent BMI of 30 or above, she did not establish obesity as a severe impairment.[10]  *Id*. Likewise, none of the submitted medical records established any vision issues, on the contrary, Ms. Koval consistently denied visual disturbances, blurry vision, and double vision when

---

[8] Records from Ms. Koval's visit to the hospital for treatment of a deep vein thrombosis (DVT) in her right arm on June 29, 2018, are found at R. 663-756.

[9] A radiograph of Plaintiff's right knee on January 11, 2019 was normal. R. 1326.

[10] Ms. Koval only occasionally was found to have a BMI over 30, which would qualify as obese. *See* R. 923, 937, 1163, 1174, 1183, 1193 (BMI over 30); *but see* 1113, 1202, 1210, 1231, 1254, 1262, 1275, 1284, 1308, where Plaintiff's BMI was below 30, and frequently as low as 25.

questioned by her physicians. *Id*. at 20. At step three, the ALJ found that Ms. Koval does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925). *Id*.[11]

At step four, the ALJ found that Ms. Koval retained the residual functional capacity to perform light work as it is defined in 20 CFR 404.1567(b) and 416.967(b) and was further limited to lifting/carrying up to ten pounds frequently. *Id*. The ALJ also placed further limits of never climbing ladders, ropes, or scaffolds; occasionally crawling or climbing ramps and stairs; occasional exposure to work involving unprotected heights and moving mechanical parts; and occasionally operating a motor vehicle. *Id*. Having defined the limits of the RFC in this manner, the ALJ was able to determine at this step that Ms. Koval could return to her prior substantial gainful activity (SGA) of working as a security guard. *Id*. at 24. Additionally, at step five, the ALJ found that alternatively, there existed in the economy additional jobs that the Claimant would be able to perform, including "garment folder," "marker II," and "photocopying machine operator," all of which are light in exertion and unskilled (SVP of 2). Therefore, the ALJ

---

[11] While the Claimant's breast cancer is a severe impairment and not to be trivialized, the listing has very specific requirements:

    (A) locally advanced cancer (inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, or cancer of any size with metastases to the ipsilateral internal mammary nodes);

    (B) Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases;

    (C) Recurrent carcinoma, except local recurrence that remits with anticancer therapy;

    (D) Small-cell (oat cell) carcinoma; or

    (E) With secondary lymphedema that is caused by anticancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity.

R. 20. The ALJ recited these requirements and stated that "[t]he claimant's breast cancer was not an inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, nor did it metastasize to the lymph nodes. She had had no recurrence and she did not have secondary lymphedema." *Id*. The record establishes that Claimant's cancer was caught and successfully treated at Stage One, (R. 402, 965, 1228), and therefore did not meet these criteria.

found, taking into consideration the Claimant's age, her education, work experience, and RFC, because the Claimant is capable of making a successful adjustment to other work existing in significant numbers in the national economy, if she did not return to her earlier work, a finding of "not disabled" was appropriate in this case. *Id.* at 26.

## **DISCUSSION**

### *A. The standard of review.*

My review of the ALJ's decision is deferential; I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. §405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of

evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing to *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; *see also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

Pursuant to regulation, an ALJ must conduct a five-step sequential analysis when reviewing a claim.

> At step one, the SSA will find that a claimant is not disabled unless he demonstrates that he is not working at a "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the SSA will find no disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant successfully demonstrates that he has a severe impairment, the SSA determines at step three whether the impairment is on a list of impairments presumed severe enough by the SSA to render one disabled; if so, the claimant qualifies. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment is not on the list, the inquiry proceeds to step four and the SSA assesses whether the claimant has the "residual

functional capacity" to perform his previous work. Unless he shows that he cannot, he is determined not to be disabled. If the claimant survives step four, the fifth step requires the SSA to consider "vocational factors" (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c). Unlike some of the earlier stages in the evaluation process, the burden of proof at step five is on the agency.

*Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004) (footnote omitted).

> B. *The ALJ correctly decided that Plaintiff failed to prove disability under the applicable statutory and regulatory scheme, the ALJ's RFC analysis is capable of meaningful review, and was based on substantial evidence.*

> 1. *The ALJ used the appropriate statutory and regulatory scheme.*

At its core, Ms. Koval's claim is that the ALJ's decision finding her not disabled was improper, given her health issues. Although not articulated by the Plaintiff, the Commissioner was correct to review the ALJ's application of the five-step process as outlined in *Ramirez* above. I agree with the Commissioner's conclusion that the ALJ properly evaluated Ms. Koval's claim pursuant to this framework, and that the record supports his findings. *See* Comm. Resp. at 4. In making his RFC determination, the ALJ noted that Ms. Koval's testimony confirmed that she is able to handle her own personal care, is able to drive, cook, shop for food, watch television, and exercise. R. 21. The ALJ also specifically stated why he believed Ms. Koval's statements about the intensity, persistence, and limiting effects of her symptoms were not completely supported by the record, including her conflicting statements concerning whether or not she handled housework, the extent to which she was adversely affected by the prescribed Tamoxifen,

and whether she had long-term issues with light-headedness and being on her feet for long periods of time.[12]

The ALJ detailed Ms. Koval's treatment for breast cancer, including her several surgeries and her post-operative drug regimen. *Id*. at 22. He detailed the findings of her abnormal mammogram in February 2017, her core biopsy in April 2017, and her mastectomy on May 1, 2017. R. 22. On May 23, 2017, she underwent right-sided Infuse-A-Port placement, and although an ultrasound in June showed small amounts of residual fluid around the tissue expander placed during the mastectomy, no fluid aspiration was needed, and Ms. Koval expressed no issues to her physicians during her June 2017 appointment. *Id*.[13] The ALJ detailed Ms. Koval's two cycles of chemotherapy and the side effects she suffered. *Id*. Ms. Koval's January 2018 follow-up noted her treatment with Herceptin and Tamoxifen, and the medical records noted she was tolerating the medications well and had no complaints. *Id*.[14]  Finally with respect to her breast cancer treatment, the ALJ recounted that she underwent a further reconstruction surgery in May 2018 and removal of the port in June 2018.[15]

The ALJ also discussed the opinions contained in the medical records:

> As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling

---

[12] The ALJ noted that Ms. Koval's medical records related that she handled the housework, contradicting her testimony that her fiancé handled it; that she did not report problems feeling unwell due to her taking Tamoxifen, and she did not report light-headedness or problems being on her feet to her physicians, who consistently recorded Ms. Koval as having a "normal gait, full strength in the bilateral lower extremities." R. 21-22 (citing to Exh. 9F at 1, 3, and 6 (R. 1228, 1230, 1233); Exhibit 4F at 4 (R. 404); Exhibit 5F at 115-16 (R. 524-25); Exhibit 8F (R. 864-1227); and Exhibit 13 F at 4 (R. 1321).

[13] The ALJ cited to Exhibits 1F at 16 (R. 313); 3F at 10, 14, 16, 17, 22-23, 43, 48 (R. 362, 366, 368, 369, 374-75, 395, 400); Exhibit 2F at 24 (R. 350); and Exhibit 9F at 15 (R. 1242) for these statements.

[14] The ALJ cites to Exhibit 9F at 6-7 (R. 1233-34) for these findings.

[15] The ALJ again cited to the record, at Exhibit 7F, at 175 and 178 (R. 837, 840). Although the ALJ did not specifically state how many surgeries Ms. Koval underwent, it does not appear that the ALJ skipped any of her treatments, so it is unclear why Ms. Koval insists the ALJ only discussed three surgeries, when she in fact underwent five. *See* Doc. No. 22 at 1 ("they was talking only about 3 surgery but it was 5 surgery not 3").

weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case as follows:

> The State agency medical consultant, Stacie Weil, M.D., opined that the claimant could perform the full range of light work. This opinion is partially persuasive. In evaluating the persuasiveness of this opinion, the undersigned has considered its' supportability, including how well the objective medical evidence relied upon by Dr. Weil supports the medical opinion and the explanation for the medical opinion provided by Dr. Weil. Dr. Weil did not provide a coherent explanation for the opinion, beyond just summarizing the evidence in the record at the time the opinion was offered, therefore, the explanation does not fully support the opinion.

R. 23. The ALJ then detailed the evidence considered by Dr. Weil, but concluded:

> These records only partially support the opinion. The normal gait and lack of fatigue supports the opinion with regard to her ability to stand, walk, and sit, while the evidence showing she underwent a left mastectomy supports the opinion with regard to her ability to lift and carry. However, her intermittent lightheadedness warrants postural and environmental restrictions.

*Id.* The ALJ then appropriately considered Dr. Weil's opinion in relation to the other evidence in the record, and found that "[t]he ongoing notations that the claimant heals well after additional surgery, tolerates her medications, and has no complaints is consistent with Dr. Weil's opinion that the claimant can perform light work." *Id.*[16]

The ALJ also examined the opinion of Ms. Koval's treating surgeon, Dr. George Zavitsanos, M.D., who opined that Ms. Koval could do no heavy lifting greater than 10 pounds. *Id.* The ALJ found this opinion "partially persuasive," stating that "Dr. Zavitsanos did not provide any explanation for his opinion; therefore, he did not provide any support for it." *Id.* The ALJ detailed Dr. Zavitsanos' treatment of Ms. Koval, which

---

[16] My independent review of the record confirms the conclusions of the ALJ were based on a thorough review of Ms. Koval's extensive medical records. *See* R. 404, 524-25, 864-1228, 1230, 1233. 1321; (doctor's records showing normal gait, lack of fatigue or other issues).

consisted of several reconstructive surgeries and placement of an implant, and concluded that his records, "showing multiple surgical procedures for her left-breast reconstruction support the restriction to lifting no more than 10 pounds. *Id*. at 24.

Ms. Koval's claim, filed on April 13, 2017, is subject to the new Social Security regulation with regard to the treatment of medical opinions, which became effective on March 27, 2017. The new regulations no longer require an ALJ to give a certain evidentiary weight to a medical opinion, but instead require the ALJ to focus on the persuasiveness of each opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a). The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be." *Id*. § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id*. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id*. § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced training and education" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id*. § 416.920c(c)(3)–(5). Only the

16

concepts of consistency and supportability, however, need be addressed by ALJ's in their written opinions. *Id*. § 416.920c(b).

The ALJ concluded that Dr. Weil's opinion that Ms. Koval could perform light work was consistent with the medical records showing that Ms. Koval "heals well after additional surgery, tolerates her medications, and has no complaints." R. 23. He found Dr. Zavitsanos' opinion restricting Ms. Koval to lifting no more than ten pounds to be supported by the records that documented Ms. Koval's multiple surgical procedures, performed by Dr. Zavitsanos, for left-breast reconstruction. R. 24.

The ALJ found that these medical opinions were largely consistent with all of the other evidence in the record, including records showing that Ms. Koval underwent two cycles of chemotherapy in June 2017, reporting nausea without vomiting, post treatment, and episodes of diarrhea that did not require medication, as well as fatigue. *Id*. Her intermittent light-headedness with position changes, however, the ALJ found was inconsistent with the doctors' opinions that she could return to light work without postural and environmental restrictions to account for it, he therefore added those restrictions to the RFC. *Id*.

The ALJ's decision in this case sets forth a clear and concise recitation of the medical evidence that he reviewed in making his decision, does not ignore or misstate any of that evidence, and the evidence supports his ultimate findings. I find there is substantial evidence to support the ALJ's treatment of the two opinions in the record, finding both were mostly supported by the evidence in the record and were largely consistent with each other and with that evidence. Thus, I find no error in the ALJ's ruling that the plaintiff is capable of light work with certain restrictions.

2. *The ALJ's decision is capable of meaningful review.*

An ALJ must provide sufficient detail in his opinion to permit judicial review. *Burnett v. Commissioner of Social Security Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). My review of the record and the ALJ's decision convinces me that the ALJ's analysis of Ms. Koval's residual functional capacity is capable of meaningful review and was based on substantial evidence. Ms. Koval argues that the ALJ's RFC analysis is not supported by substantial evidence because the ALJ failed to acknowledge that she cannot drive a truck although trained to do so because her health is still poor.[17] (Doc. No. 22 at 1). My review of the ALJ's decision, and the medical records and opinions on which it is based, demonstrates to me that the ALJ reviewed the record and issued an opinion capable of meaningful review, discussing Ms. Koval's longitudinal medical history, and providing a clear statement of his reasoning in finding the opinions of Dr. Weil and Dr. Zavitsanos to be largely consistent with and supported by the medical evidence in the record.

In his decision, the ALJ referenced all of Ms. Koval's surgeries, including the placement and subsequent removal of the port to facilitate chemotherapy, and listed the various problems she experienced with swelling and edema. He further discussed the blood clot in Ms. Koval's right arm, but properly found that it was not a severe impairment because the clot resolved and she had no further issues after four months of

---

[17] I am hampered again by Ms. Koval's lack of counsel, which has resulted in my having only the Claimant's two-page, single-spaced letter as a guide to her claims. (Doc. No. 22). Ms. Koval states that (1) she cannot handle a job as a truck driver from state-to-state because "my health cannot let me do that;" (2) she has a note from a doctor (not named) that she can work part time but not full time, and cannot lift or carry anything; (3) the record (unspecified as to where) is incorrect in that "they was talking only about 3 surgery (sic) but it was 5 surgery not 3;" (4) she was not given an opportunity to discuss the blood clot that developed in her arm at the hearing; (5) her health is "still no good" and Dr. Golstain (there are no records from this physician) wants to change her medication because she is dizzy almost daily; (6) she continues to need blood work and has passed out several times recently. (Doc. No. 22, pp. 1-2). I will construe these statements as an argument that the ALJ failed to properly weigh her medical conditions in determining that she retained a sufficient RFC to handle light work, with several limitations enumerated in the opinion.

treatment. R. 19. Here, the ALJ's opinion, read as a whole, satisfactorily articulated the

ALJ's reasons, drawn from an accurate assessment of the medical evidence, for finding:

> Due to the claimant's breast cancer with left-sided mastectomy that required multiple surgeries for reconstruction, she is limited to light work, with frequent lifting and carrying further reduced to up to 10 pounds, never climbing ladders, ropes, or scaffolds, and occasional crawling. Due to intermittent lightheadedness, as a side effect of chemotherapy, she is limited to occasional climbing of ramps or stairs, occasional exposure to work involving unprotected heights and moving mechanical parts and occasional work involving operating a motor vehicle.

R. 24.

Ms. Koval appears to contend that she is entitled to relief in the form of benefits

that will allow her to work part-time, based at least in part on health problems that have

no support in the record—including vision problems, issues with her knee, and a

possible recurrence of her cancer in her right breast. But none of these complaints are

documented in the 1300 pages of medical records in her case.  The plaintiff has failed to

establish that the ALJ made any errors in his review of her extensive medical records, or

that he improperly applied the law to her case. Ms. Koval incorrectly believes that,

because she may now not be able to work as a long-haul truck driver, that she is entitled

to benefits, however, there appears to be no barrier to her returning to her prior

employment, with which she is already familiar.[18]

The points of comparison used by the ALJ in rejecting Ms. Koval's claim of

disability are not all listed together, but it is possible to glean the ALJ's reasoning from a

---

[18] Additionally, the Social Security Regulations do not allow for "partial benefits" to a person who is capable of working "part-time." The ALJ properly determined, based on the evidence, that Ms. Koval is "not disabled," establishing a decision that no benefits are warranted, rather than "disabled," which would have supported the awarding of benefits. *See generally*, 20 C.F.R. § 404.316 (When entitlement to disability benefits begins and ends.),

review of the whole opinion. The ALJ explained that he found that Ms. Koval's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, R. 21, where the extensive medical records showed that she was "doing well status post-mastectomy" in June 2017; that the nausea she experienced during chemotherapy resolved; and that she tolerated treatment with Herceptin and Tamoxifen well. R. 22. Her mastectomy scar as well as the reconstructive surgery were well healed by January 2018. *Id.* A further reconstructive surgery in June 2018 was also successful, which the ALJ noted in deciding that "[t]he ongoing notations that the claimant heals well after additional surgery, tolerates her medications, and has no complaints is consistent with Dr. Weil's opinion that the claimant can perform light work." R. 23. The ALJ specifically noted that the non-medical evidence, that is, Ms. Koval's testimony and notes from various treating and consulting examinations, were somewhat in conflict.

> As for the claimant's statements about the intensity, persistence, and limiting effects of [] her symptoms, they are inconsistent with the evidence of record. For example, the claimant testified that her fiancé does the housework, but in August 2018 she told her doctor that she does the housework. She also testified that she felt unwell on Tamoxifen, but her doctors repeatedly noted that she was tolerating it well and had no complaints. Further, the claimant testified to ongoing light-headedness, but the only time she report[ed] intermittent light-headedness to her doctors was immediately after chemotherapy. Finally, she testified to trouble remaining on her feet for long periods of time. However, the records consistently show normal gait, full strength in the bilateral lower extremities. Finally, despite the claimant's assertion at the hearing that she would be unable to work more than part-time, in July 2018 she told her Nurse Practitioner that she was looking forward to returning to work and her upcoming trip to the Ukraine in September.

R. 21-22 (Footnotes omitted).

This explanation suffices. *See Caruso v. Commr. Of Soc. Sec.*, 99 Fed. Appx. 376, 379-80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett*" [*v. Commr. Of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)] and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("[T]he function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review). It is clear enough, based on a review of the whole opinion against the record, that given the evidence of Ms. Koval's successful breast cancer treatment, the repeated statements of her physicians that her reconstructive surgeries were successful, and conversely the lack of records supporting her other complaints, the ALJ was convinced that she could still perform light work, with some modifications to take into account a lifting limitation necessitated by her various surgeries, and further modifications to account for any lingering light-headedness caused by her chemotherapy.

Review of the ALJ's careful canvass of the medical records, R. 22, and the medical records themselves, convinces me that the ALJ's decision fits comfortably within *Jones'* requirements. In *Jones* the ALJ's opinion, "read as a whole," discussed the medical evidence that pointed to the particular ailment, and mentioned the lack of complications, as features that mitigated the severity of the diagnosis. *Jones,* 364 F.3d at 505. This served to differentiate the ALJ's opinion from the "bare conclusory statement" rejected in *Burnett*. *Id.* at 504. In this case the ALJ's opinion carefully reviewed and discussed the medical evidence of Ms. Koval's impairment (R. 22) and noted that her treatment successfully eradicated the cancer (*Id*.). Further, her plastic surgeon and her oncologist (Drs. Zavitsanos and Jablon) noted that all of her reconstruction surgeries

21

were successful and that she healed well from each. R. 1234, 1257, 1264. Conversely, the record lacks any opinions from any physician that Ms. Koval is disabled, a further indicator that her physical ailments were not as disabling as she claimed. The ALJ also noted that the record and the plaintiff's own testimony of her ability to perform a variety of activities, including taking care of herself, participating in the running of the household, driving, and shopping, undercut the credibility of Ms. Koval's claims of restrictions on her activities of daily living. R. 21-22. These assessments were based on substantial evidence. Under *Jones,* the ALJ's opinion is capable of meaningful review, and is based on substantial evidence.

The decision that Ms. Koval was capable of performing a full range of light work with certain restrictions was capable of meaningful review and was supported by substantial evidence. It was not an error.

### C.  *The ALJ reasonably conducted the hearing without an interpreter*.

In a letter to the court dated September 25, 2020, in response to my order that she file a memorandum explaining her claims, Ms. Koval stated that she should have been provided with an interpreter at her hearing, as she did not understand the proceedings. Doc. No. 22.  The record does not support this claim of error.

First, as noted by the Acting Commissioner, the record contains at least two notifications by the Social Security Administration to Ms. Koval prior to her hearing that an interpreter would be provided if she requested one. R. 108, 210. First, the disability paperwork completed by Ms. Koval in April 2017 contains the statement, "NOTE: If you cannot speak and understand English, we will provide an interpreter, free of charge." R. 210. The September 2017 letter to Ms. Koval acknowledging her request for a hearing also specifically advised Ms. Koval that she would be provided with an interpreter, and

stated in bold lettering that in order to have an interpreter at the hearing, one must be requested in advance, by phone or in writing. R. 108. Additionally, Ms. Koval did not appear at the hearing alone, having counsel present, who would have arranged for an interpreter had Ms. Koval advised that she needed one.[19]

I further agree with the Acting Commissioner that a review of the entire record does not reveal evidence that Ms. Koval was incapable of understanding the proceedings without the services of an interpreter. Comm. Resp. at 6. At the hearing, Ms. Koval was able to understand and respond in English to the ALJ's queries, and she did not at any time ask for additional explanations of anything said to her (or translations into her native language). Indeed, she explained in some detail to the ALJ that when she arrived in the United States, she did not speak any English, but that she took courses and even had a private tutor to assist her in learning English. R. 47-48. Prior to her breast cancer diagnosis, Ms. Koval obtained her Commercial Driver's License (CDL), which presumably requires a rudimentary understanding of English in order to operate a truck on roads in the United States. R. 40. Although occasionally wandering off-topic, Ms. Koval was able to respond to all of the ALJ's inquiries of her concerning her former employment, her medical issues, and her current state of health. *See generally*, R. 37-38, 40-41, 43-47, 49-53, 55. My review of Ms. Koval's extensive medical records did not reveal any instances of her failing to understand her doctors' instructions to her regarding her medical care, and Ms. Koval has not pointed to any. I therefore do not see a basis to remand this case based upon a lack of an interpreter at the hearing.

---

[19] Although Ms. Koval complains in this same letter that she did not meet her attorney until the day of the hearing, she has not specifically claimed that she advised the law firm of a desire for an attorney in advance, only to be denied the services of one.

### D. Plaintiff's counsel properly represented her, and her representation does not provide a basis for remand.

Ms. Koval also contends in her letter brief (Doc. No. 22) that her counsel did not properly represent her because she did not meet the attorney who attended the hearing with her until the morning the hearing occurred. Her submission is lacking, however, in any information about how this prejudiced her before the ALJ. Indeed, the record reflects that her counsel was familiar with Ms. Koval's case and the documents to be submitted. R. 34-36. Additionally, her attorney questioned the Vocational Expert appropriately, subjecting the ALJ's hypothetical to additional restrictions to evoke testimony that time off-task during the day, or absences from work, would preclude employment. *Id*. at 66-67. Additionally, after the hearing, counsel provided medical records to the ALJ regarding Ms. Koval's complaints of knee pain, which the ALJ considered in making his decision. R. 16.

To the extent Ms. Koval's letter brief may be construed as attempting to raise an ineffective assistance of counsel claim pursuant to the Sixth Amendment of the U.S. Constitution, the claim is not cognizable, as there is no constitutional right to counsel in non-criminal matters. *See Nelson v. Astrue*, No. 07-2622, 2008 WL 4078464 at *7 (E.D. Pa. Aug. 29, 2008) (Yohn, J.) ("These claims are not cognizable on review of the Commissioner's decision because "there is no principle of effective assistance of counsel in civil cases." *Slavin v. Comm'r,* 932 F.2d 598, 601 (7th Cir.1991)); *see also Cornett v. Astrue,* 261 F. App'x 644, 651 (5th Cir.2008) (not precedential) (rejecting a social security claimant's ineffective assistance of counsel claim and noting that "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security

proceedings")). *See also Miller v. Commissioner of Social Security*, 719 Fed. Appx. 130, 134 (3d Cir. 2017) (not precedential).

I see no reason to disturb the ALJ's decision here due to any action or inaction taken on the part of Ms. Koval's counsel, and she has provided none to me in her filings. I therefore decline to remand this case on this basis.

## **RECOMMENDATION**

Based upon the discussion above, I find that the ALJ's opinion is capable of meaningful review and there was substantial evidence to support the ALJ's findings. I do not find that the ALJ erred in conducting the hearing without a Russian interpreter, nor was there any error on the part of counsel for the Plaintiff that warrants the case being remanded. Therefore, I deny Ms. Koval's request for review and affirm the final decision of the Commissioner.

**BY THE COURT:**

*s/ Richard A. Lloret*
**HON. RICHARD A. LLORET**
**U.S. Magistrate Judge**